RECEIVED

**JOSHUA THOMAS, PRO SE**
**75 GRAND CENTRAL AVENUE – Unit #2**
**LAVALLETTE, NEW JERSEY   08735**
**TELEPHONE:  (732) 773-7469**
*PRO SE*   **PLAINTIFF**

JUN 28 2012

AT 8:30_____M
WILLIAM T. WALSH
CLERK

---

**JOSHUA THOMAS,**

            **Plaintiff,**

**vs.**

**BOROUGH OF MONMOUTH**
**BEACH; and DREW WINANS,**
**individually and in his capacity as a**
**Chief of Police of the Borough of**
**Monmouth Beach,**

            **Defendants.**

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

<u>Civil Action:</u>   12 - 3979
PGS|LHG

**COMPLAINT AND JURY DEMAND**

---

        Plaintiff Joshua Thomas, Pro Se, by way of Complaint and Jury Demand

against these defendants says as follows:

<u>**FIRST COUNT:**</u>
**(42 *U.S.C.* §1983 CLAIM)**

1.)     Jurisdiction for this Federal Court to hear plaintiff's legal claims is conferred

        pursuant to 28 *U.S.C.* §1331 (Federal Legal Claims) and 28 *U.S.C.* §1367

        (New Jersey State Law Legal Claims).  Venue is proper under 28 *U.S.C.*

        §1391.

1

2.)     Plaintiff Joshua Thomas ("plaintiff") was formerly employed by the defendant

Borough of Monmouth Beach as a government employee.

3.)     Defendant Borough of Monmouth Beach is a local municipal entity of the

State of New Jersey with place of business located at 10 Beach Road in the

Borough of Monmouth Beach, County of Monmouth, and State of New

Jersey.

4.)     Defendant Drew Winans ("defendant Winans") at all times relevant was and

is a Police Officer in the Borough of Monmouth Beach, and since January 1,

2010 has been the Chief of Police of the Borough of Monmouth Beach Police

Department.  At all times defendant Winans was acting individually and in his

official capacity as a Monmouth Beach Police Officer and / Chief of Police.

5.)     Plaintiff honorably served on active duty in the United States Coast Guard

during the time that the United States was at war with the nation of Iraq and

while the United States was actively engaged in the "war on terrorists" in the

nation of Afghanistan.  Plaintiff was honorable discharged on June 2, 2005

and is eligible and receives Veteran's benefits fro the United States

Department of Defense.  As a United States Military Veteran, plaintiff is

2

entitled to the protections of the "New Jersey Veteran's Tenure Act" as set forth in more detail herein.

6.) After plaintiff was honorable discharged from the United States Coast Guard, he ultimately obtained employment as a "municipal special police officer" in the Borough of Seaside Heights, New Jersey.

7.) On or about May 2008 plaintiff was induced to leave his employment with the Borough of Seaside Heights and to start employment as a "police officer" with defendant Borough of Monmouth Beach. Plaintiff left his employment with the Borough of Seaside Heights in part because he had then just completed the New Jersey Police Academy training and had obtained a "Class A Certification" and was offered what was represented to him to be an employment track to a permanent position as a regular police officer. Under New Jersey Law, now that plaintiff held a "Class A Certification", he could no longer legally and lawfully be employed as a "municipal special police officer" by the Borough of Seaside Heights, but rather could only be employed as a regular police officer. As such, plaintiff went to work for Monmouth Beach on the promise of such full time and permanent employment.

8.)    At all times relevant defendant Borough of Monmouth Beach expressly represented to plaintiff, to the community at large, and to other State and Federal law enforcement agencies that plaintiff was indeed lawfully employed in the capacity as a "Monmouth Beach Police Officer".  In such capacity plaintiff wore a police uniform, carried a gun, drove a police car, exercised powers of arrest, charged persons with motor vehicle offenses and crimes, and routinely testified in Court wearing a uniform and as a Police Officer regarding the charges he had issued and arrests that he had made.

9.)    Unknown to plaintiff at the time he was initially hired but found out shortly thereafter was the fact that a major reason for defendant Borough of Monmouth Beach hiring plaintiff is that they immediately needed additional day to day on duty police support on their police department.  This was because at least 2 very senior police officers were preparing to retire or leave the police force, and while those police officers remained technically employed and part of the Police force, those Officers had literally stopped actually coming into work so that they could use up and collect pay for months of accrued sick time and vacation time.  In short, these other officers were being paid full time *for not working*, before they were going to retire, so to compensate for the shortfall in manpower the defendant Borough of

4

Monmouth Beach hired plaintiff "part time", but to really work "full time", to cover for these other officers.  This is because there are specific Federal and State requirements that defendant Monmouth Beach had to meet as to actual coverage with officers on duty, and plaintiff was therefore used "full time" (while the other Officers sat at home collecting full pay) to satisfy the deficiency in workforce and so that defendant Monmouth Beach's status was not in jeopardy.

10.)   Because of the needs of defendant Monmouth Beach and for their own benefit, defendant Monmouth Beach violated New Jersey law and kept plaintiff as a part time "special officer" who worked full time, so that defendant Monmouth Beach could illegally avoid having to pay plaintiff full permanent salary and benefits, allowing defendant Monmouth Beach to essentially circumvent the law and pay full salary and benefits to retiring officers while they sat home and did not come into work.  Defendant Borough of Monmouth Beach violated law and benefited greatly financially to the financial detriment of plaintiff.

11.)   In August 2009, 15 months after he had already been working full time as

a special police officer for defendant Borough of Monmouth Beach, 3 months

longer then allowed to work as a "special police officer" under clearly

established law, plaintiff, while *off duty*,  was involved in an altercation on the

Seaside Heights Boardwalk wherein he was the victim and was physically

attacked by a male, Ronald Ortiz Magro.  This assault upon plaintiff was

filmed by a company, 495 Productions, Inc., as part of a pilot for a TV show

which was ultimately aired on MTV Networks called "The Jersey Shore".

After the assault, plaintiff was held and physically restrained by 495

Production Security Guards while Ortiz Magro was allowed to flee the scene,

all so that plaintiff and his wife could be arrested.

12.)   Shortly thereafter, defendant Winans was appointed to perform an

"internal affairs investigation" regarding plaintiff and the incident.  After fully

cooperating and then discussing the matter with then Monmouth Beach Police

Chief White, plaintiff tendered his resignation.  Defendant Winans never

completed any formal investigation despite having been ordered by Chief

White to do so, nor was a formal "internal affairs investigation file" opened

and kept, nor was any formal and final "report" issued by Winans.

6

13.)   After a few weeks, the charges were resolved in Seaside Heights Municipal Court. Plaintiff was immediately "re-hired" by Chief White, and retroactively disciplined with retroactive suspension without pay, and plaintiff was fully reinstated. This was plaintiff's official discipline and official "punishment" for the off duty infraction. Defendant Winans had completed whatever internal affairs "investigation" he performed, and the matter was completely resolved and closed.

14.)   Plaintiff thereafter continued to work as a loyal and valuable employee. On January 1, 2010 Chief White retired and was replaced as Chief by defendant Winans. Plaintiff was, pursuant to the recommendation of outgoing Chief White, hired pursuant to formal Borough of Monmouth Beach Resolution as a now permanent Police Officer. However, despite being an employee for 20 months at this point, in this "new" position plaintiff was required to serve a probationary period by law. This all took place AFTER the August 2009 incident and AFTER the August 2009 incident was resolved with discipline being imposed upon plaintiff.

15.)    In mid January 2010, MTV Networks aired the assault, edited completely out of context, as part of the reality TV show "Jersey Shore. Almost immediately thereafter, defendant was temporarily suspended by defendant Winans.

16.)    Winans discussed the potential firing of plaintiff with the governing body in closed session, denying plaintiff the right to be heard, and denying plaintiff the right to have the "ostensible new" claims heard in public, and denying plaintiff any opportunity to defend the allegations against him and his reputation.

17.)    Defendant Winans, the investigating internal affairs officer from the previous fall, viewed the tapes of the incident and now all of a sudden took the position that plaintiff's verbal version of events as told to him (Winans) the previous fall was not accurate, and Winan, now from the position of Chief, took the position – without actually showing any tape footage to the governing body – that in *his opinion* that plaintiff was the aggressor and that *in his opinion* plaintiff had not been truthful the previous fall during the "internal affairs investigation" which *he had conducted and concluded* (for which there was no file or record or report) and that *in his opinion* he believed that

8

plaintiff should be fired because plaintiff was dishonest, could not be trusted, and had lost the faith of his fellow officers.  This, of course, was all nonsense, and rather, now that Chief White was no longer around, and embarrassed by the MTV show, defendants Winans and Monmouth Beach were intent on firing plaintiff no matter what the facts were and no matter what the law allowed.

18.)    Defendant Winans specifically and publically called plaintiff a liar, and prohibited defendant any forum within which to challenge the allegations and defend himself.  Plaintiff was specifically denied the right to any written specification of charges and any public hearing or discussion of the "charges" to clear his name and defend his reputation, and yet he was repeatedly allowed to be called a "liar" by Winans in public with no basis, and then be fired. *See* "Exhibit A".

19.)    If Winans' version that plaintiff had lied was to be treated as true, then an equal argument could be publically made that Winans was incompetent in the way that he had handled the internal affairs investigation the previous fall as there was absolutely no "new" information whatsoever, and the only "new" fact was that MTV aired a severely edited version of the incident on national,

9

and thereafter international, television, and on the internet.  The fact is that
plaintiff was and is not a "liar" at all, and that defendants Winans and
Monmouth Beach were simply politically embarrassed by the media frenzy
surrounding the Jersey Shore Show, and the fact that one of their Police
Officers was shown on the Show in a negative light.


20.)    Through private counsel plaintiff filed a *prerogative writ* claim, *Joshua
Thomas v. Borough of Monmouth Beach,* Docket No. MON-L-956-10,
against defendant Monmouth Beach in New Jersey State Court on one very
limited legal issue, specifically claiming violation of a clear New Jersey
*statutory right* in that *N.J.S.A.* 40A:14-147 prevented plaintiff from being
fired for "cause" without first being given written notice with a detailed
specification of the charges, and then a public hearing.  *N.J.S.A.* 40A:14-150
authorizes by statute immediate *de novo* review in the New Jersey Superior
Court of the disciplinary and dismissal actions of full time police officers.


21.)    The Trial Court dismissed the claim and the lawsuit, holding that the
statute by its terms did not confer the claimed limited *statutory* right to notice
and a hearing on plaintiff, as plaintiff was only a "probationary police
officer", someone who is specifically exempted from the purview of the

statute, which was specifically limited to apply only to **permanent** police

officers, and plaintiff was not a permanent police officer yet (we disagree) as

he was still in probationary period (again, we disagree).

22.)     While that matter was being litigated and on appeal, on April 16, 2012,

defendant Winans signed a certification again publically falsely accusing

plaintiff of lying to him, and claiming it was because plaintiff lied that he was

terminated.  The actions of defendant Winans and defendant Monmouth

Beach in initially and continually formally accusing plaintiff of being a liar,

without allowing plaintiff any right or forum to defend himself, has damaged

plaintiff's good name and reputation and has effectively caused plaintiff to be

"black balled" from all possible employment in law enforcement, which will

continue to be the case unless and until plaintiff is given a forum and an

opportunity to clear his name and reputation.  The actions of defendants

Winans and Monmouth Beach are continuing and are part of an ongoing

policy and practice of wrongful conduct against plaintiff which is consistent

with their Ordinance but clearly contrary to statutory and constitutional law.

While there may be a question (on appeal) whether plaintiff has a *statutory*

right to a public hearing to clear his name, there is no question that under well

settled law that plaintiff is entitled by the Federal Constitution to a public

hearing to clear his name and to challenge the false and defamatory

accusations of defendant Winans.

23.)    In a series of cases, specifically *Board of Regents v. Roth,* 408 *U.S.* 564

(1972), *Perry v. Sindermann,* 408 *U.S.* 593 (1972), and *Owen v. City of*

*Independence,* 445 *U.S.* 622 (1980), the United States Supreme Court clearly

ruled that under certain circumstances the Due Process Clause of the 14th

Amendment to the United States Constitution specifically guarantees a

government employee the right to a "name clearing hearing".  A government

employee has a 14th Amendment Constitutional right to a name clearing

hearing" when the government employee's name and reputation are impugned

and stigmatized by the government employer in the course of, and as the result

of, discharge from government employment.  A government employee has a

Constitutionally recognized "liberty interest" in his good name and reputation,

and a government may not damage an  employee's "liberty interest" without

providing the "due process of law" guaranteed by the Fourteenth Amendment

to the United States Constitution.  As the Supreme Court stated, the dismissal

of a government employee accompanied by a "charge against him that might

seriously damage his standing and associations in the community" would

qualify as something "that the government is doing to him", <u>so as to trigger</u>

the due process right to a hearing at which the employee could refute the

charges and publically clear his name.   (Emphasis added).

24.)   42 U.S.C. §1983 was enacted by Congress to provide citizens with a

remedy for State action that deprives or is aimed at depriving a person of their

rights as secured and guaranteed by the United States Constitution and laws.

25.)   42 U.S.C. §1983 provides as follow:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State or
> territory or the District of Columbia, subjects, or causes
> to be subjected, any citizen of the United States or other
> person in the jurisdiction thereof to be deprived of any
> rights, privileges, or immunities secured by the
> Constitution and laws shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress.  For the purpose of this section
> any act of Congress applicable exclusively to the
> District of Columbia shall be considered a statute of the
> District of Columbia.

26.)   42. U.S.C. §1983 provides a remedy for state action aimed at depriving

persons of their rights as protected and guaranteed by the Constitution and

laws.  42 U.S.C. §1983, in addition to other remedies, authorizes declaratory

relief, injunctive relief, nominal damages, compensatory damages, punitive

damages and attorneys' fees.

27.)    For a party to prevail in an action under 42 U.S.C. §1983, it must be shown that [1] there has been /is/ will be a violation of that party's rights as guaranteed and secured by the Constitution or laws, and [2] that such violation was caused either directly or by a pattern, practice, usage or custom, by a "person" acting under the color of state law.

28.)    At issue in this case are plaintiff's rights to procedural due process of law, and the right to substantive due process of law, both of which federal rights are guaranteed and secured by the Fourteenth Amendment to the United States Constitution.

29.)    Defendants Winans and Monmouth Beach are state actors acting under color of state law pursuant to a policy and practice and plan and design within the meaning of 42 *U.S.C.* §1983 and they have individually and collectively engaged in illegal conduct which has proximately resulted in damage, and continues to proximately damage, plaintiff.

## SECOND COUNT
## (VETERAN'S TENURE ACT)

30.)    Plaintiffs repeat and re-alleges all prior allegations of this pleading.

31.)    Plaintiff is a veteran who served during time of war and as such is entitled to the protections of *N.J.S.A.* 38:16-1, which require that such a veteran may only be fired from his public employment for cause and only after a fair and impartial hearing, all of which defendants have denied him.

## THIRD COUNT:
## (BREACH OF CONTRACT / UNJUST ENRICHMENT CLAIM)

32.    Plaintiff repeats and re-alleges all prior allegations of this pleading as if set forth fully at length herein.

33.    The actions of defendants constitute a breach of contract / and or breach of quasi-contract which has resulted in the unjust enrichment of defendant Monmouth Beach.  Specifically, plaintiff was improperly paid a reduced salary as a Special Police Officer without benefits beyond the period allowed by State Law and defendant Monmouth Beach benefited from this

arrangement unjustly and illegally.  Plaintiff was also entitled to a hearing

pursuant to Collective Bargaining Contract.

34.  Plaintiff has provided sufficient notice to defendant Monmouth Beach

within the meaning of the New Jersey Contractual Liability Act, *N.J.S.A.*

59:13-1 to -10.

34.

## FOURTH COUNT:
## BAD FAITH IN CONTRACT

35.)     Plaintiff repeats and re-alleges all prior allegations of this pleading as

if set forth fully at length herein.

36.)     The actions of defendants constitute a "Bad Faith" in contract and

plaintiff has been proximately damaged thereby.

## REQUEST FOR RELIEF:

**WHEREFORE,** plaintiff hereby demands judgment against defendants individually

and/or jointly and/or severally as follows:

16

**A.)**   Judgment pursuant to 42 *U.S.C.* §1983 declaring that defendants have violated plaintiff's rights under color of state law and Ordering defendant Monmouth Beach to hold a full and fair and public "name clearing hearing" for plaintiff at which time plaintiff may publically defend the false allegations made against him and his good name and reputation by these defendants;

**B.)**   Judgment awarding the plaintiff compensatory damages;

**C.)**   Judgment awarding the plaintiffs punitive damages against defendant Winans;

**D.)**   Judgment awarding plaintiff attorneys fees (if it becomes necessary to hire an attorney), interest and costs of suit;

**E.)**   Judgment awarding plaintiff such further relief as the Court deems fair, just and equitable.

**DATED:** 6/27/12

PRo,se
**JOSHUA THOMAS, PRO SE PLAINTIFF**

## <u>JURY DEMAND:</u>

Plaintiff hereby demands a trial by jury on all contested issues of material fact.

DATED: 6/27/12        JOSHUA THOMAS, PRO SE PLAINTIFF

# EXHIBIT "A"

"J.T." and "K.P.",

                  Plaintiffs,

    v.

RONALD ORTIZ (a/k/a "Ronnie Ortiz");
VIACOM INTERNATIONAL, INC.; MTV
NETWORKS; 495 PRODUCTIONS
COMPANY; LIZ CHAPETTA; SALLYANNE
SALSANO; JAMES BIANCO; JACQUELINE
FRENCH; SCOTT JEFFRIES; PAM LALIMA;
JOHN DOES 1-10 (FICTITIOUS NAMES);
AND P.D.M. MANAGEMENT, INC., T/A
"BEACHCOMBER BAR AND GRILL",

                  Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: OCEAN COUNTY
Docket No.: OCN-L-898-10

CIVIL ACTION

**CERTIFICATION OF
DREW WINANS**

DREW WINANS, of full age, hereby certifies as follows:

1.    I am currently the Chief of Police of the Borough of Monmouth Beach and have been the Chief since January 1, 2010. Prior to that time, I was a Lieutenant and the Head of the Internal Affairs Investigations for the Borough of Monmouth Beach Police Department. Unless otherwise indicated below, I make this certification based on my personal knowledge.

2.    In the early morning on August 24, 2009, Patrolman Jeff Godwin of the Borough of Monmouth Beach Police Department told me that Joshua Thomas, a Monmouth Beach Special Police Officer, had been arrested for a disorderly persons offense.

3.    As Head of the Internal Affairs Investigations, I investigated Mr. Thomas' arrest. I reviewed the Seaside Heights Police Department reports. I also spoke directly with Mr. Thomas about the incident. Mr. Thomas told me that he had been the victim of an assault by a cast member of the "Jersey Shore" television show, that the cast member had instigated a fight with him, and that he had unfortunately lost his temper on August 24, 2009.

4.    Mr. Thomas was eventually permitted to return to his duties as a Special Police Officer with the Monmouth Beach Police Department in October 2009, with certain discipline being imposed including a 60 day suspension retroactive to his August 24, 2009 arrest.

5.    Mr. Thomas was suspended because he was arrested on August 24, 2009 and because of his conduct towards Seaside Heights Police Department officers. At no time was Mr. Thomas suspended because he was the victim of an assault or because a cast member of "Jersey Shore" instigated a fight with him.

6.    On January 8, 2010, I reviewed portions of the "Jersey Shore" episode involving Mr. Thomas. I later reviewed unedited video footage of the August 24, 2009 incident. Based on my review, I found Mr. Thomas' prior reports to me regarding the incident were inaccurate.

7.    Because Mr. Thomas lied to me and others and lost his credibility, I recommended that Mr. Thomas' employment with the department be terminated. Mr. Thomas was terminated by the Borough Commissioners on February 9, 2010.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: April 16, 2012

DREW WINANS